# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

PERRY HILL and JAMES ROGERS, both individually
and on behalf of a class others similarly situated,

                                               Plaintiffs,

v.

COUNTY OF MONTGOMERY, MICHAEL AMATO and
MICHAEL FRANKO,

                                               Defendants.

9:14-cv-00933 (BKS/DJS)

---

**Appearances:**

*For Plaintiffs:*
Law Offices of Elmer Robert Keach, III, P.C.
Elmer Robert Keach, III
Maria K. Dyson
One Pine West Plaza, Suite 109
Albany, NY 12205

Migliaccio & Rathod LLP
Nicholas A. Migliaccio
412 H Street N.E., Suite 302
Washington, DC 20002

*For Defendants:*
Goldberg Segalla LLP
Jonathan M. Bernstein
8 Southwoods Boulevard, Suite 300
Albany, NY 12211

Leary Bride Mergner & Bongiovanni, P.A.
William H. Mergner
7 Ridgedale Avenue
Cedar Knolls, NJ 07927

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs Perry Hill and James Rogers bring this conditions-of-confinement class action[1] under 42 U.S.C. § 1983 against Defendants County of Montgomery, Michael Amato, and Michael Franko. (Dkt. No. 136). Plaintiffs allege that Defendants failed to provide adequate nutrition while they were in the Montgomery County Jail ("MCJ") in Fultonville, New York, in violation of the Eighth and Fourteenth Amendments. (Dkt. No. 136). Presently before the Court are the parties' motions in limine. (Dkt. Nos. 200, 207). In their motions, the parties address the admissibility of: (1) inmate grievances, (2) class questionnaires, (3) evidence regarding the amount of time between inmates' meals and the "absence of a commissary at MCJ," (4) evidence of the commissary's return in 2019, (5) evidence of inmate weight loss, (6) evidence of prior civil rights actions against Defendants Amato and Franko, and (7) evidence of the "Hotel Amato" sign at MCJ. (Dkt. No. 200, 207).[2] Defendants also move to limit liability against Defendants Amato and Franko to the time period prior to their respective retirements from MCJ. (Dkt. No. 200). On February 14, 2020, the Court held a pretrial conference and heard oral argument on the parties' motions. For the following reasons, the parties' motions are granted in part and denied in part.

---

[1] On August 20, 2018, the Court granted Plaintiffs' renewed motion for class certification and certified a primary class and pre-trial and post-trial detainee sub-classes under Rules 23(b)(3) and (c)(4). *Hill v. Cty. of Montgomery*, No. 14-cv-933, 2018 WL 3979590 (N.D.N.Y. Aug. 20, 2018). The parties represent that the number of class members is approximately two thousand.

[2] The Court has directed further briefing on: (i) whether Plaintiffs' previously undisclosed witnesses should be precluded from testifying under Rule 37 of the Federal Rules of Civil Procedure and (ii) the parties' trial plan for the damages phase of this case. In addition, the parties have indicated that they will endeavor to resolve any issues regarding the use of impeachment evidence under Rule 609 of the Federal Rules of Evidence and will bring any disputes to the Court's attention prior to trial. Accordingly, the Court reserves decision on those aspects of the parties' motions in limine.

## II. DISCUSSION

### A. Inmate Grievances

Plaintiffs seek to admit into evidence food-related grievances various inmates filed at MCJ between 2011 and 2015 on the ground that they show Defendants had notice of inmate complaints of hunger and inadequate nutrition. (Dkt. No. 207, at 5). Defendants oppose the introduction of the grievances on hearsay grounds. (Dkt. No. 200, at 24 (citing Fed. R. Evid. 801(c))).

Plaintiffs first argue that the inmate grievances are admissible as business records under Rule 803(6). (Dkt. No. 207, at 5). As the Second Circuit has explained:

> A business record may be admitted into evidence even though it is hearsay if: (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (b) the record was kept in the course of a regularly conducted activity; (c) making the record was a regular practice of that activity; (d) the custodian certifies the record; and (e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016) (citing Fed. R. Evid. 803(6)(a–e)). Plaintiff has not demonstrated how inmates who made grievances were acting "in the course of a regularly conducted business activity" or how making the grievances was "a regular practice of that activity." Fed. R. Evid. 803(6)(B), (C); *see* Fed. R. Evid. 803, Advisory Committee Notes (1972 Proposed Rules) ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying on them or by a duty to make an accurate record as part of a continuing job or occupation"); *see*, *e.g.*, *United States v. Strother*, 49 F.3d 869, 876 (2d Cir. 1995) ("We are reluctant to adopt a rule that would permit the introduction into evidence of memoranda drafted in response to unusual or 'isolated' events, particularly where

3

the entrant may have a motive to be less than accurate.") (citations omitted); *Abascal*, 820 F.3d at 565 (ruling that prison monitoring report prepared by a private nonprofit corporation based on inmate questionnaires, interviewing guards and visiting the facility "is not the kind of 'regularly conducted activity' contemplated by the business records exception").

Defendants argue that the grievances are, in any event, inadmissible under the business records exception because they "lack overall indications of trustworthiness and reliability." (Dkt. No. 216, at 10). "A duty to report . . . 'has long been recognized as the principal means of establishing the reliability of a hearsay statement' offered under the Business Records Exception." *Abascal*, 820 F.3d at 566 (quoting *United States v. Reyes*, 157 F.3d 949, 952 (2d Cir. 1998)). Here, MCJ inmates were under no duty to submit grievances to facility staff regarding food or nutrition. In *Abascal*, the Court found that inmates' statements "lack[ed] indicia of trustworthiness" when they "were under no obligation to provide information" to the investigators preparing a prison monitoring report. *Id.*; *see also Lewis v. Velez*, 149 F.R.D. 474, at 486 (S.D.N.Y. 1993) (concluding incident reports prepared by correction officers following prison incident, explaining that "reports of inmate beatings show a lack of reliability and trustworthiness due to the self-interest of the correction officers responsible for the records, such records are inadmissible"). Accordingly, on this record Plaintiffs have failed to show how the grievances are admissible under the business records exception.

Plaintiffs further argue that even if the grievances are not admissible as business records, they are admissible for the purpose of showing that Defendants Amato and Franko had notice that inmates in MCJ were complaining that they were not receiving enough food and that the food lacked adequate nutrition. Assuming that Plaintiffs are able to lay a foundation showing

Defendant Amato or Franko was aware of the grievances,[3] they would not be hearsay if they were admitted to show that Defendants had notice of complaints regarding the food being provided at MCJ. "To be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay." *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990). Although Defendants argue that "plaintiffs' inherent purpose in introducing this evidence is for the truth of the statements included in the grievances," (Dkt. No. 216, at 11), the Court, if requested, will issue a limiting instruction at the time of introduction, and at the end of the case, cautioning the jury to consider the grievances only on the issue of notice, and not for the truth of the allegations in the grievances.

### B. Class Questionnaires

Defendants seek to preclude as hearsay, questionnaires completed by class members concerning their experience at MCJ. (Dkt. No. 200, at 24–25). Plaintiffs stated at the pretrial conference that they do not intend to introduce the questionnaires into evidence. Indeed, the questionnaires are not on their exhibit list. (Dkt. No. 211). Accordingly, Defendants' motion to preclude the questionnaires is denied as moot.

### C. Time Between Meals and Absence of Commissary

Defendants seek to prohibit Plaintiffs from introducing evidence "related to the amount of time between inmates' meals" and the "absence of a commissary" on the grounds that such evidence is inadmissible under Rules 402 and 403 because it "would only confuse the jury as to the relevant issues." (Dkt. No. 200, at 2–5). Defendants argue that they "complied with the state regulation by ensuring that the inmates received three meals a day within a 24-hour period as

---

[3] There is some evidence Defendant Amato was aware of the 2011 grievances, (Dkt. No. 123-1, at 2), and that Defendant Franko was aware of the 2013 grievances, (Dkt. No. 180-35, at 2).

5

required." (Dkt. No. 200, at 4) (citing N.Y. Comp. Codes, R. and Regs. tit. 9, § 7009.6)). Plaintiffs respond that "evidence that inmates had to go fourteen hours between dinner and breakfast," with no access to food, is relevant to their unconstitutional conditions of confinement claim. (Dkt. No. 218, at 2–4).

Under the objective prong of the Eighth and Fourteenth Amendments, Plaintiffs must show "that the conditions either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell v. Pinero*, 849 F. 3d 17, 30 (2d Cir. 2017) (quoting *Walker v Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). The length of time between meals and the absence of any other source of food, and the impact these conditions had on the hunger inmates allegedly experienced at MCJ—which allegedly led some inmates to seek nonfood sources to satisfy their hunger—have long been part of the conditions of confinement claim in this case. *See, e.g.*, *Hill v. Cty. of Montgomery ("Hill II")*, 2019 WL 5842822, at *2 (N.D.N.Y. Nov. 7, 2019) ("[I]nmates often go approximately 14 hours between dinner and breakfast the next day . . . . MCJ provides no snacks between meals and the commissary has not sold food since 2008."); *Hill v. Cty. of Montgomery ("Hill I")*, 2018 WL 3979590, at *2 (N.D.N.Y. Aug. 20, 2018) (noting Hill's testimony that he "ate cocoa butter sticks, vitamins that he purchased from the commissary, and toothpaste to supplement his diet"). Moreover, as the jury must consider whether the conditions "alone or in combination" posed a danger to inmates' health, evidence concerning the timing of the meals, and the absence of any other food source, is both material and highly relevant.[4] *Darnell*, 849 F.3d at 30. The Court therefore finds that the probative value of this evidence

---

[4] It is also relevant to the issue of Defendant Amato's notice of the conditions and intent; Plaintiffs intend to introduce evidence that Defendant Amato removed the nonfood items inmates were eating from the commissary. (Dkt. No. 218, at 5).

6

substantially outweighs any danger of confusing the issues. Accordingly, Defendants' motion to preclude evidence regarding the time between meals and the absence of a commissary is denied.

### D. Return of Commissary

Defendants seek to preclude Plaintiffs from introducing evidence that the Sheriff who took over following Defendant Amato's retirement, reopened the commissary in 2019. (Dkt. No. 200, at 5). Defendants assert Rule 407 prohibits evidence of subsequent remedial measures.[5] (*Id.*). Plaintiffs oppose this motion. (Dkt. No. 218, at 5).

Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407. According to Plaintiffs, the return of the commissary in 2019, "is only tangential" to their case, but they seek to admit this evidence: (i) for purposes of explaining the Class definition, and (ii) "to counter Defendant Amato's claim that he felt the jail couldn't have a commissary because there were too many problems with inmates flushing their wrappers down

---

[5] The new Montgomery County Sheriff who reopened the commissary is not a defendant in this case and Plaintiffs have indicated that the period of liability in this case ends on December 31, 2018, when Defendant Amato retired. The parties have not addressed how the fact that a nondefendant reopened the commissary affects the application of Rule 407. *See Schafer v. Bd. of Co-op. Educ. Servs. of Nassau Cty.*, No. 06-cv-2531, 2012 WL 5547319, at *1 (E.D.N.Y. Nov. 15, 2012) ([C]ourts have unanimously held that Rule 407 does not bar evidence of subsequent remedial measures by non-defendants." (quoting *Lion Oil Trading & Transp., Inc. v. Statoil Marking & Trading (US) Inc.*, No. 08-cv-11315, 2011 WL 855876, at *7, 2011 U.S. Dist. LEXIS 24516, at *21 (S.D.N.Y. Feb. 28, 2011)).

the toilet." (Dkt. No. 218, at 5). Plaintiffs do not explain how the return of the commissary is relevant to the class definition. To the extent Plaintiffs intend to introduce such evidence for the purpose of showing a commissary was feasible, it is not clear that feasibility is a contested issue.

The Second Circuit has cautioned that "'[f]easibility' is not an open sesame whose mere invocation parts Rule 407 and ushers in evidence of subsequent repairs and remedies." *In re Joint E. Dist. & S. Dist. Asbestos Litig.*, 995 F.2d 343, 345 (2d Cir. 1993). Indeed, "a defendant must first contest the feasibility of a warning before the subsequent warning would become admissible." *Id.* at 345–46 (citing Fed. R. Evid. 407 advisory committee's notes (1972 Proposed Rules) ("The requirement that the other purpose be controverted calls for automatic exclusion unless a genuine issue be present and allows the opposing party to lay the groundwork for exclusion by making an admission.")). During his deposition, Defendant Amato testified that they took the commissary away because inmates were hoarding food, which led to ants, stuffing wrappers "between furniture, causing fire hazards," and gambling with food from the commissary. (Dkt. No. 180-2, at 36). It appears that Defendants have not contended that the MCJ was *unable* to provide a commissary; instead they have maintained that they chose to remove it for health and safety reasons. *See In re Joint E. Dist. & S. Dist. Asbestos Litig.*, 995 F.2d at 346 ("The record is clear that Crane at no point argued that it was unable to issue a warning. Instead, it vigorously denied that its product required a warning or was defective without a warning.").

The Court's ruling will await trial. If Defendants open the door at trial to the feasibility of a commissary, evidence of its reopening will be admissible.

### E. Inmate Weight Loss

Defendants seek to bar Plaintiffs from introducing evidence of inmate weight loss on the ground that such evidence is relevant to the issues of causation and damages only and should not

be admitted during the liability phase of the trial. (Dkt. No. 200, at 18–21). Plaintiffs oppose Defendants' motion. (Dkt. No. 218, at 11).

There was evidence, at summary judgment, that Defendant Franko was aware that inmates were alleging that they were losing weight. *Hill II*, 2019 WL 5842822, at *14. Thus, weight loss may be relevant to show Defendant Franko knew that inmates were not receiving a sufficient number of calories. Moreover, in deciding both the Eighth and Fourteenth Amendment claims, the jury will have to determine whether Plaintiffs have established that the conditions "pose an unreasonable risk of serious damage to [their] health." *Darnell*, 849 F.3d at 30. "[P]ervasive weight loss" among MCJ inmates, as Plaintiffs assert, (Dkt. No. 218, at 11), may be relevant to this issue. Accordingly, Defendants' motion to preclude evidence of weight loss is denied.

### F.  Prior Civil Rights Actions

Defendants seek to preclude Plaintiffs from introducing evidence of prior civil rights lawsuits against them. (Dkt. No. 200, at 21–23). Plaintiffs do not oppose this aspect of Defendants' motion. (Dkt. No. 218, at 2). It is, accordingly, denied as moot.

### G.  Hotel Amato Sign

Defendants move to bar Plaintiffs from referring to a sign posted in the MCJ intake area that states: "Welcome to the Hotel Amato. No Frills-No Thrills. If you do not like the service don't come back."[6] (Dkt. No. 200, at 25–26). Defendants argue the sign has limited probative value, is unfairly prejudicial, confuses the issues, will mislead the jury, cause undue delay, and waste time. (Dkt. No. 200, at 26). Plaintiffs assert that the sign is admissible to show Defendant Amato's "indifference" and the "total authority" he exercised at the MCJ. (Dkt. No. 218, at 6).

---

[6] According to Plaintiffs, the sign says: "Welcome to Hotel Amato. No thrills. No frills. Don't come back if you don't like it." (Dkt. No. 218, at 6).

They argue it is also admissible under Rule 404(b) as evidence of his "motive and intent in denying detainees adequate nutrition," and his "cruelty" toward the inmates in the jail. (Dkt. No. 218, at 7).

Federal Rule of Evidence 404(b) states in relevant part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but that it "may be admissible for another purpose, such as proving motive" or "intent." Fed. R. Evid. 404(b). The Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (citing *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)). To determine whether to admit Rule 404(b) evidence, the court should consider whether: "(1) the prior [act] evidence [is being] 'offered for a proper purpose'; (2) the evidence [is] relevant to a disputed issue; (3) the probative value of the evidence [is] substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) [there is] an appropriate limiting instruction." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).[7]

Subject to balancing the probative value against the 403 concerns at the time of trial, the sign may be admissible to show Defendant Amato's intent toward the inmates at MCJ. To establish a violation of the Eighth Amendment, Plaintiffs must show that Defendant Amato acted "with 'a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or

---

[7] It is not clear that the sign is "other act" evidence under Rule 404(b). Evidence is not considered other act evidence under Rule 404(b) "if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).

safety.'" *Walker*, 717 F.3d at 125 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)). To the extent Plaintiffs offer the Hotel Amato sign to show Defendant Amato's alleged state of mind or intent toward the inmates of MCJ, they offer it for a proper purpose for which it appears to be highly probative. With respect to Defendants' argument that it is unfairly prejudicial, the Court notes that "[b]ecause virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403, the prejudice must be unfair. The unfairness contemplated involves some adverse effect beyond tending to prove a fact or issue that justifies admission." *Constantino v. Herzog*, 203 F.3d 164, 174–175 (2d Cir. 2000). While it would appear that the sign's probative value substantially outweighs the danger of unfair prejudice and other 403 concerns, the Court will, as Plaintiffs suggest, reserve on ruling on this issue until trial. (Dkt. No. 218, at 7).

### H. Liability following Defendant Amato and Franko's Retirement

Defendants Amato and Frank assert they should not be held liable for anything at MCJ following their respective retirements. (Dkt. No. 200, at 6–10). Plaintiffs agree that Defendant Amato's retirement marks the end of the liability period. (Dkt. No. 218, at 2). Plaintiffs also agree that Defendant Franko cannot be held liable for anything after his retirement in November 2016. (Dkt. No. 218, at 2). Accordingly, Defendants' motion to preclude liability after Defendants Amato and Franko's retirement is denied as moot.

### III. CONCLUSION

For these reasons, it is

11

**ORDERED** that the parties' motions in limine, (Dkt. Nos. 200, 207), are granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: February 19, 2020
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge