**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PERRY HILL and JAMES ROGERS, both individually
and on behalf of a class of others similarly situated,

                                     Plaintiffs,

v.

COUNTY OF MONTGOMERY, MICHAEL AMATO and
MICHAEL FRANKO,

                                     Defendants.

9:14-cv-00933 (BKS/DJS)

---

**Appearances:**

*For Plaintiffs:*
Law Offices of Elmer Robert Keach, III, P.C.
Elmer Robert Keach, III
One Pine West Plaza, Suite 109
Albany, NY 12205

Migliaccio & Rathod LLP
Nicholas A. Migliaccio
412 H Street N.E., Suite 302
Washington, DC 20002

*For Defendants:*
Goldberg Segalla LLP
Jonathan M. Bernstein
8 Southwoods Boulevard, Suite 300
Albany, NY 12211

Leary Bride Mergner & Bongiovanni, P.A.
William H. Mergner
7 Ridgedale Avenue
Cedar Knolls, NJ 07927

Hon. Brenda K. Sannes, United States District Judge:

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, APPROVAL OF CLASS COUNSEL'S FEES AND APPROVAL OF SERVICE AWARDS**

## I.   INTRODUCTION

The above-captioned matter came before this Court on Plaintiffs' Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs and Approval of Service Awards ("Motion for Final Approval") (Dkt. Nos. 269, 278, 287). The motion is unopposed. The Court held a telephonic fairness hearing on May 7, 2021. For the reasons that follow, Plaintiffs' Motion is granted.

## II.   BACKGROUND AND PROCEDURAL HISTORY

The Court previously recounted, at length, the nature of Plaintiffs' claims and the relevant facts in ruling on the parties' motions for, among other things, class certification, amendment of the complaint, summary judgment, and preliminary approval of the class action settlement.[1] The Court assumes general familiarity with the background of this case. Having reviewed all of the parties' submissions, including the Settlement Agreement, (Dkt. No. 241), which the Court incorporates into this Order, and having considered the parties' positions, as articulated during the telephonic hearings concerning the motions for settlement approval, the

---

[1] *Hill v. Cnty. of Montgomery (Hill I)*, No. 14-cv-933, 2017 WL 9249663, 2017 U.S. Dist. LEXIS 221081 (N.D.N.Y. Sep. 29, 2017) (denying motion for class certification); *Hill v. Cnty. of Montgomery (Hill II)*, No. 14-cv-433, 2018 WL 2417839, 2018 U.S. Dist. LEXIS 88884 (N.D.N.Y. May 29, 2018) (dismissing declaratory and injunctive relief claims and granting in part and denying in part motions to amend and intervene); *Hill v. Cnty. of Montgomery (Hill III)*, No. 14-cv-933, 2018 WL 3979590, 2018 U.S. Dist. LEXIS 140305 (N.D.N.Y. Aug. 20, 2018) (granting motion for class certification of liability class); *Hill v. Cnty. of Montgomery (Hill IV)*, 2019 WL 5842822, 2019 U.S. Dist. LEXIS 193658 (N.D.N.Y. Nov. 07, 2019) (denying motion for summary judgment); *Hill v. Cnty. of Montgomery (Hill V)*, No. 14-cv-933, 2020 WL 819225, 2020 U.S. Dist. LEXIS 27844 (N.D.N.Y. Feb. 19, 2020) (granting in part and denying in part motions in limine); *Hill v. Cty. of Montgomery*, No. 14-cv-00933, 2020 WL 5531542, 2020 U.S. Dist. LEXIS 168099 (N.D.N.Y. Sept. 15, 2020) (granting motion for preliminary approval of class action settlement).

Court makes the findings and grants the relief set forth below approving the Settlement upon the terms and conditions set forth in this Order.[2]

## III.   STANDARD OF REVIEW

Because this case is a class action, this Court must approve the Settlement. The procedure for approval includes three distinct steps: (a) preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes; (b) dissemination of mailed and/or published notice of settlement to all affected class members; and (c) a final settlement approval hearing or fairness hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *See* Fed. R. Civ. P. 23(e); *see also* 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS, §§ 13:1 *et seq.* (5th ed. 2014).

Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *Elliot v. Leatherstocking Corp.*, No. 10-cv-0934, 2012 WL 6024572, at * 4, 2012 U.S. Dist. LEXIS 171443, at *7 (N.D.N.Y. Dec. 4, 2012). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman*

---

[2] The Court has reviewed the Proposed Final Approval Order Plaintiffs submitted, (Dkt. No. 287-4), and Defendants' response "requesting changes to [the] Proposed Final Order," (Dkt. No. 288). As the Court is issuing this Order based on the relevant case law, the history of this case, and only partially on Plaintiffs' Proposed Final Order, and adopts the class period as stated in its prior orders, *see supra* note 1, it need not correct the class period. (Dkt. No. 288, at 1 (Defendants noting that the class period in the Proposed Final Order "is incorrect" and "has the class period ending in 2019," when "[i]t should be 2018")). Nor does the Court incorporate Defendants' proposed edits regarding the Court's retention of jurisdiction, (Dkt. No. 288, at 1), as it is sufficient to say that the Court retains jurisdiction over this matter, *see supra* Section V. However, the Court has, at Defendants' request, added a provision regarding Medicare liens, *see supra* Section V. Indeed, the parties alerted the Court that such a provision may be necessary at the May 7, 2021 telephonic fairness hearing.

*Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005).

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000). If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah v. MetroPlus Health Plan Inc.*, NO. 11-cv-0569, 2012 WL 5874655, at *2, 2012 U.S. Dist. LEXIS 166383, at *6 (E.D.N.Y. Nov. 20, 2012) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at *4, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007)) (alterations in original).

## IV.   DISCUSSION

### A.   Certification of the Final Settlement Class

Plaintiffs previously sought and received class certification under Rule 23. This Court determined that the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b). (Dkt. No. 102). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Newberg § 11:27 (*citing In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)). The Court further appointed Plaintiffs' counsel as Class Counsel and the named Plaintiffs as Class Representatives. As of the date of this Order, no facts have been presented to indicate that the preliminary determination was incorrect or

erroneous. Thus, for the reasons set forth in the Court's prior certification orders, the Court hereby grants final certification of the Settlement Class.

### B.    Procedural Fairness

This case's history demonstrates that the parties reached this Settlement only after engaging in thorough investigation and discovery, permitting each side to assess the potential risks of continued litigation, and robust settlement discussions, including several discussions via telephone, email, and in-person. The Settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery, and through the mechanism of a mediation overseen by a neutral with deep experience and insights into the issues presented by wage-and-hour litigation.

Fairness is evaluated by "the negotiating process leading up to the settlement as well as the settlement's terms." *Alleyne v. Time Moving & Storage, Inc*., 264 F.R.D. 41, 54 (E.D.N.Y. 2010). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI Career*, 2007 WL 2230177, at *4, 2007 U.S. Dist. LEXIS 57918, at *12.

**C.**     **Substantive Fairness**

**1.**     ***Grinnell* Factors**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*

As a result of amendments to Rule 23 implemented in December 2018, the *Grinnell* factors are now, in material part, expressly set forth in Rule 23(e)(2), which requires courts to analyze four factors: (A) the adequacy of representation by class representatives and class counsel; (B) whether settlement negotiations were done fairly at arm's length; (C) the adequacy of relief provided under the settlement (including the terms of any proposed award of attorneys' fees); and (D) the equity of treatment of Class Members relative to one another.

Courts in the Second Circuit continue, however, to consider and analyze the *Grinnell* factors as well. *See Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 24 (E.D.N.Y. June 3, 2019) (describing *Grinnell* as "the Second Circuit's seminal case for assessing the fairness of class action settlements"); *id.* at 30 (observing that it is unclear whether Rule 23(e)(2)(A)-(D)'s factors replace or supplement the *Grinnell* factors); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("The Court understands

the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors … Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.").

Here, all of the *Grinnell* and Rule 23(e)(2) factors weigh in favor of granting final approval of the Settlement Agreement.

First, litigation through trial would be complex, expensive, and long. The parties have already conducted substantial discovery and any trial would likely necessitate further discovery as defense counsel has indicated that it would seek to re-open discovery to depose any class members class counsel intended to call as witnesses at trial. (Dkt. No. 279, at 11). In addition, a class trial would address liability only as individual inquiries regarding damages would be necessary. Presenting evidence on the complex factual and legal issues at such a trial would require significant amounts of time and resources for Plaintiffs—as well as Defendants—and would also require significant judicial resources. Accordingly, the Settlement enables the parties to avoid the significant expense and delay of additional depositions and other discovery, trial, and individual damages inquiries. The settlement of the pending claims instead ensures certainty of outcome and substantial recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Moreover, post-trial, any judgment would potentially be appealed, which would extend the duration of the litigation through the completion of all appeals. By contrast, the settlement of the litigation makes significant monetary relief promptly available to Class Members.

Therefore, the first *Grinnell* factor (mirrored in Rule 23(e)(2)) weighs in favor of final approval.

Second, the response to the settlement has been positive. In addition to providing direct mailed notice of the Settlement, the Claims Administrator launched a notice program and published the class notice in local newspapers and through a targeted social media campaign. (Dkt. No. 269-1, ¶¶ 3–7). The Claims Administrator initially mailed the class notice to 2,111 potential class members. (Dkt. No. 269-1, ¶ 4). Subsequently, through review of booking records, the parties discovered a number of additional potential class members ("supplemental class members") and obtained an extension to provide notice to these potential class members. (Dkt. Nos. 271, 275). The Claims Administrator sent a supplemental class notice to 74 potential class members. (Dkt. No. 279-1, ¶ 2). The Claims Administrator has received a total of 754 claims. (Dkt. No. 279-1, ¶ 4). The parties determined that 37 of those claims were invalid. (Dkt. No. 279-1, ¶¶ 4–5). Thus, as of April 23, 2021, there were 717 participating class members.[3] (Dkt. No. 279-1, ¶ 5). That constitutes a solid and positive response. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and three opted out); *see also Willix v. Healthfirst Inc.,* No. 07-cv-1143, 2011 WL 754862, 2011 U.S. Dist. LEXIS 21102, at *11 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven out of 2,025 class member submitted timely objections and two requested exclusion). Thus, this factor weighs strongly in favor of approval.

---

[3] According to a May 21, 2021 Status Report, there may be one additional Class Member, William Robinson. (Dkt. No. 285, at 1). The Claims Administrator is attempting to reach Mr. Robinson and Class Counsel intends to honor a claim from Mr. Robinson. (*Id.*).

Third, discovery has progressed sufficiently to permit the parties to recommend settlement. There is no particular threshold that discovery must reach in order to demonstrate that discovery has advanced far enough to allow the parties to resolve the case responsibly. The analysis turns upon "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard. Class Counsel have reviewed thousands of documents and inmate booking records, taken and defended numerous depositions, and examined expert testimony. (Dkt. No. 279, at 13). Further, the parties met twice to discuss settlement, once during a final pretrial conference, and again in a settlement conference mediated by Magistrate Judge Stewart. Plaintiffs represent that they engaged in a vigorous exchange regarding their respective claims and defenses during these conferences. (*Id.*).

Fourth, the risks of establishing liability and damages further weighs in favor of final approval. As in any civil lawsuit, there are considerable risks as to Defendants' liability and damages. In weighing the risks of establishing liability, class treatment, and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted). Trying this conditions of confinement class-action case on the merits would require significant factual development and favorable outcomes—at trial and on appeal—both

of which are uncertain and lengthy process. Having reviewed the parties' positions on the merit, as well as the conflicting evidence and expert opinions, the Court easily concludes the risks of establishing liability are high and outweighed by the settlement's benefit of awarding each class member a certain recovery. Accordingly, this factor weighs in favor of approval.

Fifth, the risk of maintaining the class status through trial is also present. At the time the parties reached a settlement-in-principle, Defendants continued to argue that individualized factual issues regarding each class member's experience while incarcerated at Montgomery County Jail weighed against class certification. While Plaintiffs would of course deny that any of these issues precludes certification, settlement eliminates the risk, expense, and delay inherent in this process. In sum, there are manifest risks posed in maintaining the class. *Elliot*, 2012 WL 6024572, at *4, 2012 U.S. Dist. LEXIS 171443, at *11 (discussing the burdens and risks of maintaining class status through trial). Accordingly, this factor weighs in favor of approving the Settlement.

Sixth, the Defendants' ability to pay was a substantial factor in the parties' decision to settle this matter. *See Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable."). Here, the parties have represented that Montgomery County is in a strained financial situation—consistently operating with a deficit—and faced a lack of insurance coverage with respect to this lawsuit. (Dkt. No. 279, at 15). Counsel for Montgomery County's insurance providers attended the settlement conference with Magistrate Judge Stewart and were able to work together to offer a $1,000,000 settlement amount—an amount that will provide meaningful redress to the numerous class members in this case. It does not appear Defendants would have the ability to withstand a higher judgment. This factor, and the attendant risks and

costs in the efforts to ultimately collect a judgment, including the potential lack of insurance coverage, was an important factor in negotiating the Settlement. This factor therefore weighs in favor of approval.

Seventh, the substantial amount of the Settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178). Instead, "'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor. *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12, 2011 U.S. Dist. LEXIS 105775, at *34 (S.D.N.Y. Sept. 16, 2011).

The eighth and ninth *Grinnell* factors favor final approval. As previously noted, there are risks associated with proceeding with Plaintiffs' claims through trial and appeal. Those risks must be weighed against Defendants' offer to resolve the case for $1,000,000 enabling a significant payment to each eligible class member who might otherwise not receive any payment if the case proceeded to trial. And even assuming the maximum possible recovery is higher than the settlement amount, given the Defendants' defenses and the inherent risks of litigating this action through trial, and the possibility that the Defendants would be unable to satisfy a judgment for more than the Settlement Amount, if one were obtained by Plaintiffs after

trial, the settlement represents a significant percentage of the recovery that the Class would have achieved had they prevailed on their claims, survived an appeal, and sought to enforce and collect upon a judgment.

Accordingly, the Settlement falls within the range of reasonableness because it achieves a significant benefit for Class Members in the face of substantial obstacles. It is based upon alleged damages to all Class Members and was negotiated taking the entire Class into consideration. The Settlement constitutes an excellent value proposition given the attendant risks of litigation. In addition, the Settlement will be completed and paid within a relatively short timeline after final approval, thus yielding recovery for the Class Representatives and Class Members years sooner than would be required for completion of additional discovery, (*see* Dkt. No. 279, at 11 (indicating Defendants would seek to depose class members being called as witnesses at trial)), and a long trial followed by possible appeals. This factor weighs heavily in favor of approving the Settlement.

## 2. Rule 23(e)(2) Requirements

The Court concludes that the Rule 23(e)(2) requirements also favor approval. First the Class Representatives and the Class have, at all times, been adequately, and aggressively, represented. Plaintiffs' Counsel are experienced in class action and civil rights litigation. They have actively pursued significant and time-consuming discovery, litigated dispositive motions, and obtained class certification. Second, the settlement negotiations were done fairly at arm's length. Finally, as discussed, the settlement amount and proposed distribution of funds provides meaningful and equitable relief to each class member.

Thus, for the aforementioned reasons analyzing the *Grinnell* factors, the Settlement results in the Class Members receiving adequate relief. Under Rule 23(e)(2)(C)(i)–(ii) (costs,

risks, and delay of trial and appeal and effectiveness of distribution of relief), the Settlement

avoids these risks that would inevitably occur if this lawsuit proceeded to trial, or appeal and the

mechanisms set forth above and detailed in the Settlement Agreement ensure smooth, efficient,

and effective class notice and payment procedures, overseen and supervised by an experienced

Class Administrator with particular experience in the administration of settlements arising from

civil rights cases. (Dkt. No. 269-1, ¶ 2).

Rule 23(e)(C)(iii) requires this Court to consider the timing of payment of attorneys' fees.

With respect to the payment, the Settlement Agreement provided that Defendants will not oppose

an application by Plaintiff's Counsel to seek $300,000 in attorneys' fees (thirty percent of the

settlement amount) and $17,083.22 in expenses. Class counsel has agreed to divide this fee as

follows: $200,000 to the Keach Law Firm and $100,000 to Migliaccio & Rathod. (Dkt. No. 282,

¶ 5). The attorneys' fees for class counsel will be paid at the same time that the settlement

proceeds are paid, namely thirty days after the settlement is approved by the Court, assuming no

appeals are filed. (Dkt. No. 282, ¶ 4). As discussed *infra,* Plaintiffs have demonstrated that their

requested fees satisfies the standards in this Circuit, including the factors enunciated in

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Under Rule 23(e)(2)(C)(iv), this Court must consider "any agreement required to be

identified under Rule 23(e)(3)." Generally, this provision has been read to reference the

settlement agreement itself, including attorney's fees awarded pursuant to the settlement. *Berni*,

332 F.R.D. at 42 (citing 5 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:12 (5th ed.

2018)). As explained above, the Settlement Agreement and its terms provide adequate relief to

the Class.

In accordance with Rule 23(e)(2)(D), the Settlement Agreement treats Class Members equitably relative to one another: each Class Member will receive $50 in addition to a pro rata share of the Settlement Fund determined by the number of days they were in Montgomery County Jail, capped at 365 days per claimant. (Dkt. No. 279, at 5). According to the Class Administrator:

> Currently, the allocation of the Net Settlement Amount among the Participating Class Members will yield a payment of 5.54 per day incarcerated. Consequently, the minimum payment due to a class member who spent the minimum 14 days in the Montgomery County Jail is $127.56. The maximum payment due to a class member whose claim was capped under the settlement agreement at 365 days of incarceration is $2,072.10. The average payment to each class member is $ 840.19, including the $ 50.00 payment due to each class member.

(Dkt. No. 279-1, at 3). The Settlement Agreement's plan of allocation, which divides the Settlement funds proportionately among Class Members as determined by the number of days they spent in Montgomery County Jail, thus allowing a greater recovery to those who spent more time in the jail, is reasonable. *See also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.").

Accordingly, the Court finds that all of the Rule 23(e)(2) factors and *Grinnell* factors have been satisfied.

### D.    Award of Fees and Costs to Class Counsel and Service Awards to Class Representatives

Class Counsel seek $300,000 (thirty percent of the settlement amount) for attorneys' fees, $17,083.22 in costs, $55,000 for payment to the Claims Administrator, and service awards to class representatives and class members who were deposed.

### 1.    Attorneys' Fees

Courts should consider the following factors when reviewing a request for attorneys'
fees in a common fund case: "(1) the time and labor expended by counsel; (2) the magnitude
and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of
representation; (5) the requested fee in relation to the settlement; and (6) public policy
considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

First, the time and effort expended by Class Counsel in prosecuting the litigation and
achieving the Settlement support the fee request. Class Counsel did substantial work
identifying, investigating, prosecuting, and settling the Class Representatives and the Class
Members' claims. Class Counsel collectively devoted a total of 1,657.42 hours of attorney and
paralegal time litigating this action, (*see* Dkt. No. 287, at 2 (The Law Offices of Elmer
Robert Keach, III); Dkt. No. 278-3, at 4 (Migliaccio & Rathod LLP)), [4] and their legal work will
not end with approval of the proposed Settlement. (Dkt. No. 279, at 18). Additional time and
resources will necessarily be expended responding to Class Members' inquiries, concluding the
claims process, and filing a distribution motion. No additional compensation will be sought for
this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL

---

[4] The Law Offices of Elmer Robert Keach, III

| Name | Role/Years Experience | Hours | Hourly Rate | Proposed Fee |
|------|----------------------|-------|-------------|--------------|
| Elmer Robert Keach | Attorney/24 Years | 587.5 | $350.00 | $202,625.00 |
| Maria Dyson | Attorney/8 Years | 491.8 | $190.00 | $93,442.00 |
| Joanne Siler | Paralegal | 50 | $80.00 | $4,000.00 |
| Total | | 1,129.3 | | $303,067.00 |

Migliaccio & Rathod LLP

| Name | Role/Years Experience | Hours | Hourly Rate | Proposed Fee |
|------|----------------------|-------|-------------|--------------|
| Nicholas A. Migliaccio | Partner | 222.95 | $759.00 | $169,219.05 |
| Jason S. Rathod | Partner | 26.2 | $759.00 | $19,885.80 |
| Ashley M. Pileika | Associate | 232.17 | $378.00 | $87,760.26 |
| Selin Demir | Associate | 23.7 | $378.00 | $8,958.60 |
| Erick Quezada | Associate | 10.5 | $206.00 | $2,947.50 |
| Bruno Ortega | Law Clerk | 12.4 | $206.00 | $2,554.40 |
| Kyra Jamison | Paralegal | .2 | $206.00 | $41.20 |
| Total | | 528.12 | | $288,812.41 |

6971424, at *10, 2015 U.S. Dist. LEXIS 152668, at *27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Class counsel have provided contemporaneous billing records evidencing counsel's work on this action, and have explained why Plaintiffs' counsel's team was appropriately sized. Class Counsel spent 1,657.42 hours of attorney and paralegal time working on this litigation, which, billed at counsel's regular hourly billing rate, totals $591,879.41, and is higher[5] than the requested fee—$300,000. (Dkt. No. 278, ¶ 24).

Second, the risks of litigation support the requested fee. "[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54. In applying this factor, courts have repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5, 2010 U.S. Dist. LEXIS 63342, at *14 (E.D.N.Y. June 24, 2010).

Class Counsel received no compensation during the litigation, and they advanced and incurred $17,083.22 in expenses in prosecuting this Action for the benefit of the Class. (Dkt. No. 279, at 17). Had Class Counsel not achieved the Settlement, this investment of time and

---

[5] Migliaccio & Rathod's hourly rates reflect the "generally accepted rates for District of Columbia firms," (Dkt. No. 278-3, at 4), and are significantly higher than the hourly rates employed in the Northern District of New York. *See Cruz v. Sal-Mark Rest. Corp.*, No. 17-cv-0815, 2019 WL 355334, at *7, 2019 U.S. Dist. LEXIS 13529, at *20 (N.D.N.Y. Jan. 28, 2019) (noting that "[r]ecent cases in the Northern District have upheld hourly rates between $250 and $350 for partners"). However, the Court need not determine whether Migliaccio & Rathod has shown that it has overcome the presumption favoring application of the forum rule, *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009), and is entitled to out-of-district rates because the agreed-to award is approximately one-third of the amount sought at District of Columbia rates.

money would have been lost. Class Counsel's assumption of this contingency fee risk supports the reasonableness of the requested fee. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *27, 2010 U.S. Dist. LEXIS 119702, at *78 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

Third, although Class Counsel repeatedly missed Court deadlines and that lack of compliance has led to delays in this case, including in the issuance of this final order,[6] overall the quality of Class Counsel's representation supports the fee request. Class Counsel has substantial experience prosecuting and settling class actions, including civil rights actions. The quality of Class Counsel's representation is best evidenced by the quality of the result achieved. *See In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *7, 2007 U.S. Dist. LEXIS 85554, at *23(S.D.N.Y. Nov. 7, 2007); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The Settlement has provided a favorable result for the Class in light of the risks of continued litigation and the County's financial condition.

Further, the quality of the opposition faced by Class Counsel warrants consideration in assessing the quality of Class Counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7, 2007 U.S. Dist. LEXIS 85554, at *23 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re*

---

[6] The Court initially ordered Class Counsel to provide time and expense records in support of the attorneys' fees application by February 24, 2021. (Dkt. No. 270). While that deadline was extended in view of the need to reschedule the final telephonic hearing, Class Counsel was on notice that such records were required. And yet Class Counsel failed to file those records in any of its supplemental submissions, (*see, e.g.*, Dkt. Nos. 278, 279), necessitating the Court's issuance of a second order directing the filing of such records, (Dkt. No. 281). Despite knowing since February 24, 2021 that such records were required, Class Counsel was unable to meet the Court's deadline, delaying the issuance of this order.

*Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 03 MDL 1529, 2006 WL 3378705, at *3, 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by Goldberg Segalla, LLP, an experienced law firm. Therefore, this factor weighs in favor of the requested fee.

Fourth, the requested fee is within the range of percentage fees that courts in this Circuit have awarded in comparable cases. *See Comverse*, 2010 WL 2653354, at *3, 2010 U.S. Dist. LEXIS 63342, at *10 ("[w]hen determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value") (internal quotation marks omitted). Class Counsel's request for approximately thirty percent of the gross settlement amount is reasonable and "consistent with the norms of class litigation in this circuit." *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *7, 2011 U.S. Dist. LEXIS 21102, at *17 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action). *See, e.g.*, *Gillian v. Addicts Rehab. Ctr. Fund*, No. 05-cv-3452, 2008 WL 782596, at *5, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008) (awarding one-third of $450,000 common fund in wage and hour case).

Fifth, as also previously discussed above, the positive reaction of the Class, including the absence of any objections, and only one request for exclusion, supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29, 2010 U.S. Dist. LEXIS 119702, at *85 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee.").

The Court finds that the amount of fees requested is fair and reasonable. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "'[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

The Court hereby awards Class Counsel $300,000 for attorneys' fees.

### 2. Costs

The Court has reviewed and approves Class Counsel's request for costs and a fee of $55,000 to the Claims Administrator. *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *10, 2005 U.S. Dist. LEXIS 24890, at *29 (S.D.N.Y. Oct. 24, 2005) (approving payment of "expenses incurred by Co-Lead Counsel include such expenses as expert witness fees, claims administrator fees, and other expenses necessary to the litigation and settlement of this action").

The Court further finds reasonable a service award to each Class Representative in the amount of $10,000 each and $500.00 incentive awards to the eleven individuals who have filed claims and were deposed. (Dkt. No. 278, at 6). There have been no objections to these service awards, and, as previously explained, through their efforts, the Class Representatives have enabled over seven hundred class members to obtain recoveries from Defendants.

Absent those efforts, it is questionable if this Settlement would have been achieved. "Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expanded in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Massiah*, 2012 WL 5874655, at *8, 2012 U.S. Dist. LEXIS 166383, at *22 (citing *Toure v. Amerigroup Corp.*, No. 10-cv-5391, 2012 WL 3240461, at *6, 2012 U.S. Dist.

LEXIS 110300, at *16 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and

$5,000.00)). *See also Willix*, 2011 WL 754862, at 7, 2011 U.S. Dist. LEXIS 21102, *19–20

(approving service awards of $30,000, $15,000, and $7,500).  *See generally* NEWBERG §§ 17:1

*et seq.* (analyzing incentive awards).

Because of the size of the Class, the amount of recovery made available by the

Settlement, and their efforts to help investigate the claims, participate in discovery, and be

actively involved in the lengthy resolution process, the Class Representatives merit $10,000

each and the class members who were deposed merit incentive awards of $500 each.

## V.   CONCLUSION

Accordingly, it is

**ORDERED** that the Motion for Final Approval (Dkt. Nos. 269, 278) is

**GRANTED**; and it is further

**ORDERED** that should the Class Claims Administrator receive notice of a

Medicare lien pertaining to any Class Member that submitted a claim, payment by the

administrator shall not be made to that Class Member until the lien issue is resolved with

Medicare through the Centers for Medicare & Medicaid Services (CMS); and it is further

**ORDERED** that this Court expressly retains jurisdiction as to all matters relating

to the administration, consummation, enforcement, and interpretation of the Settlement

Agreement and of this Final Approval Order and the accompanying final judgment; and it

is further

**ORDERED** that the entire case is dismissed on the merits and with prejudice.

It is so **ORDERED.**

Dated: June 2, 2021

Brenda K. Sannes
U.S. District Judge